IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 23-154-1 & -2 |
| CHRISTOPHER BURTON | : | |
| KHALIL JACKSON-FLETCHER | : | |

<u>**MEMORANDUM**</u>

**SURRICK, J.**                                                                                                                    **JUNE 2, 2025**

The 11-count Indictment in this matter charges Defendants Christopher Burton ("Burton") and Khalil Jackson-Fletcher ("Jackson-Fletcher") with conspiracy to commit kidnapping and additional substantive offenses relating to two alleged kidnapping incidents in December 2021 and February 2022. (Indictment, ECF No. 1.) Presently before the Court are Burton's *pro se* oral Motion for Severance from his co-Defendant (ECF No. 120) and supporting Memorandum ("Burton Mem.," ECF No. 130), Jackson-Fletcher's Motion for Severance of His Trial from That of *Pro Se* Defendant Christopher Burton and supporting Memorandum ("Jackson-Fletcher Mem.," ECF No. 133), and the Government's Response and Memorandum of Law in Opposition to Defendants' Motions for Severance ("Gov't. Opp.," ECF No. 139). For the following reasons, Defendants' Motions for Severance will be denied without prejudice.

**I.      BACKGROUND**

   **A.      Factual Background**

Count 1 of the Indictment charges that from December 2021 through February 16, 2022, Burton and Jackson-Fletcher conspired with each other and with George Pollydore ("Pollydore"), charged elsewhere, and other individuals to kidnap six individuals identified as "E.L.," "H.T.," "B.T.," "A.T.," "M.T.," and "H.H. (Indictment, Ct. 1 ¶¶ 1-3) The Indictment alleges that as part of the conspiracy, Defendants and Pollydore employed common manner and

means to plan and commit the crimes involved in both kidnapping incidents, including by using mobile devices and applications; attempting to conceal their identities; carrying and brandishing firearms; using physical restraints, physical force, violence, threats, and intimidation against the victims; and dividing the proceeds of the kidnappings and related offenses among themselves. (*Id.* ¶¶ 4-14 (Manner and Means).)

The Indictment sets forth the Overt Acts Defendants allegedly committed in connection with the kidnapping incidents. (*Id.*, Overt Acts ¶¶ 1-11.) It alleges that between December 11, and December 18, 2021, Burton used the OfferUp mobile application and a cell phone to arrange a meeting with "Person 1" for December 18, 2021, at a designated location, at which "Person 1" was to buy vending machines from Burton. (*Id.*, Overt Acts ¶ 1.) On December 18, 2021, Jackson-Fletcher and Pollydore allegedly drove to the designated location, while Burton drove to the location separately and communicated with Pollydore by phone using the Telegram mobile application. (*Id.* ¶ 2(a), (f).) When E.L. arrived at the designated location, Jackson-Fletcher and Pollydore, brandishing firearms, forced E.L. into a vehicle, tied his wrists with zip ties, took his wallet and cell phone, used the Cash App banking application on E.L.'s cell phone to transfer money from E.L.'s bank account to an account controlled by Pollydore, drove E.L. to various bank locations where they forced him to withdraw cash from his accounts for Defendants and Pollydore, and drove E.L. to his residence where Jackson-Fletcher entered the home and stole E.L.'s firearm. (*Id.* ¶¶ 2(b)-(f).)

The Indictment alleges that on or about January 26, 2022, Pollydore and Anthony Clark ("Clark"), charged elsewhere, opened a TD Bank account ending in -4258 in the name of "Anthony Clark" ("Account No. -4258"). (*Id.* ¶ 3.) In late January 2022, Burton allegedly met with Jackson-Fletcher and Pollydore to plan their next kidnapping and robbery. (*Id.* ¶ 4.) Burton

identified H.T. as the next victim and, at Burton's direction, Pollydore purchased a GPS tracker, which Jackson-Fletcher, Pollydore, and another individual placed on H.T.'s car. (*Id.* ¶¶ 4-6.)

The Indictment alleges that on or about February 4, 2022, Burton, Jackson-Fletcher, and Pollydore, all armed with and/or brandishing handguns, stole H.T.'s wallet and cell phone, used H.T.'s phone to transfer money from his bank accounts to accounts controlled by Pollydore, and drove H.T. to a residence where they held him in the basement for multiple hours while they wire transferred money from H.T.'s bank accounts. (*Id.* ¶¶ 7(a)-(d).) While Defendants were holding H.T. in the basement of this residence, Burton allegedly beat H.T. and drilled his arm with an electric screwdriver. (*Id.* ¶ 7(d).) In the evening of February 4, 2022, Burton, Jackson-Fletcher, and Pollydore allegedly drove H.T. to his residence and, brandishing their firearms, they entered the home, where B.T. and A.T., a 10-month-old infant, were also present. (*Id.* ¶ 7(e).) Defendants and Pollydore allegedly forced H.T. and B.T. into the basement and ransacked the home looking for cash and valuables. (*Id.* ¶ 7(f).)

On February 5, 2022, the Indictment alleges, Jackson-Fletcher and Pollydore drove to a CVS where they used H.T.'s bank card to purchase items, Burton and Pollydore forced H.T. to drive to a casino to obtain a cash advance, Defendants and Pollydore assaulted and restrained H.T. and B.T., and Burton burned H.T.'s face with a clothes iron and choked B.T. with a belt. (*Id.* ¶¶ 8(a)-(c).)

On February 6, 2022, Jackson-Fletcher and Pollydore allegedly forced H.T. to drive to a Target store where they used H.T.'s bank card to purchase electronics and other items, and Burton, Pollydore, and Clark forced H.T. to drive to multiple bank locations where Clark withdrew from Account No. -4258 funds obtained from H.T. and B.T. (*Id.* ¶ 9(a)-(b).) The Indictment further alleges that when M.T. and H.H. arrived at H.T.'s residence at different times

on February 6, 2022, Jackson-Fletcher and Pollydore used their firearms to force M.T. and H.H. into the basement. (*Id.* ¶¶ 9(c), (g).) When M.T. could not remember the code to unlock his cell phone, Jackson-Fletcher allegedly held A.T upside down, threatened to drop the infant, and used a necktie tied around A.T.'s neck to lift the baby off the ground. (*Id.* ¶ 9(e).) Jackson-Fletcher and Pollydore also allegedly restrained and assaulted M.T., and Jackson-Fletcher pointed a firearm at M.T., pulled the trigger, and said "next time, this will have a bullet in it." (*Id.* ¶ 9(f).)

In addition to the conspiracy charged in Count 1, the Indictment charges both Burton and Jackson-Fletcher with the kidnappings of E.L., H.T., and B.T. (Counts 2-4), the kidnapping of the minor, A.T. (Count 5); two counts of Hobbs Act robbery (Counts 8, 10); and two counts of using a firearm during and in relation to a crime of violence (Counts 9, 11). Jackson-Fletcher is additionally charged with the kidnappings of M.T. and H.H (Counts 6-7).

  **B.**  **Procedural History**

The Indictment was filed on April 12, 2023, Defendants were arrested the following day, and the Indictment was unsealed on April 14, 2023. (ECF Nos. 1, 10-12.) Defendants, represented by appointed CJA counsel, were arraigned on April 18, 2023, and both stipulated to pretrial detention and entered pleas of not guilty to all counts charged. (ECF Nos. 15, 16.) On May 1, 2023, the Court set a trial date of June 5, 2023. (ECF Nos. 20, 21.) On May 18, and May 23, 2023, respectively, Jackson-Fletcher and Burton filed unopposed motions to continue the trial date (ECF Nos. 25, 28), which the Court granted, setting a new trial date of January 8, 2024. (ECF Nos. 26, 33.) On August 13, 2023, new retained counsel entered his appearance on behalf of Burton. (ECF No. 43.) Burton subsequently filed three counseled, unopposed motions to continue the trial. (ECF Nos. 47, 51, 55.) The Court granted those continuances and ultimately rescheduled the trial for January 13, 2025. (ECF Nos. 47, 52, 56.) On December 12, 2024, Burton's retained counsel filed a motion to withdraw. (ECF No. 62.) On December 17,

2024, following a hearing, the Court granted counsel's motion to withdraw and appointed CJA counsel Leigh M. Skipper, Esquire, to represent Burton. (ECF No. 70.)

On December 27, 2024, Jackson-Fletcher filed a Motion to Dismiss the Indictment with prejudice or, in the alternative, for Severance of his trial from Burton's, asserting that the pretrial delay violated Jackson-Fletcher's Sixth Amendment right to speedy trial. (Motion to Dismiss/Sever, ECF No. 71.) The Government opposed the Motion to Dismiss/Sever. (ECF No. 73.) On January 7, 2025, Burton's new CJA counsel filed a motion to continue the trial by approximately six months, noting counsel's recent appointment and the need to review voluminous discovery, evaluate pretrial motions, conduct investigation, and confer with Burton. (ECF No. 74.) On January 8, 2025, the Court adjourned the January 13, 2025 trial, with a new trial date to be set by further order. (ECF No. 75.) On February 3, 2025, the Court issued a Memorandum and Order denying Jackson-Fletcher's Motion to Dismiss/Sever. (ECF Nos. 77, 78.) On February 12, 2025, following a status hearing, the Court rescheduled the trial for June 16, 2025, the date agreed to by the parties. (*See* Order, ECF No. 85; 2/12/25 Hr'g Minutes, ECF No. 84.)

On March 14, 2025, Burton submitted a *pro se* letter requesting to waive his right to counsel and proceed *pro se*. (ECF No. 90.) The Court held a status hearing on March 24, 2025, and, after a detailed colloquy, granted Burton's request to proceed *pro se* and appointed his former CJA counsel Skipper as standby counsel.[1] (3/24/25 Hr'g Tr., ECF No. 117, at 3-15.) At the March 24, 2025 hearing, Burton stated on the record that he requested "separation" of his

---

[1] Shortly before the March 24, 2025 hearing, Skipper filed a Motion on behalf of Burton requesting that the trial of Indictment Counts 1, 2, 8, and 9 be severed from the trial of Counts 3-7, 10, and 11. (Motion to Sever Counts, ECF No. 92.) Jackson-Fletcher subsequently joined in Burton's counseled Motion to Sever Counts. (ECF No. 94.) The Court denied the Motion to Sever Counts in a Memorandum and Order issued May 15, 2025. (ECF Nos. 141, 142.)

5

case from Jackson-Fletcher's, and he reiterated that request at a motions hearing held on April 17, 2025, but he did not state the basis for this request or the reasons he believed severance of the Defendants to be necessary.[2]  (*Id.* at 14, 19; *see also* 4/17/25 Hr'g Tr., ECF No. 134, at 36.)  The Court ordered Burton to file a written memorandum in support of his oral Motion for Severance of the Defendants (ECF No. 121), which Burton submitted at a status hearing held on May 5, 2025.  (ECF No. 130.)  At the May 5, 2025 hearing, the Court directed Jackson-Fletcher and the Government to file written submissions regarding potential severance of the Defendants. [3] (5/5/25 Hr'g Tr., ECF No. 136, at 5.)  On May 8, 2025, Jackson-Fletcher filed his Motion for Severance and supporting Memorandum.  (ECF No. 133.)  The Government filed its Opposition to Defendants' Motions for Severance on May 14, 2025.  (ECF No. 139.)  The trial of this case is currently scheduled for July 21, 2025.  (ECF No. 143.)

---

[2] At the March 24, 2025 hearing, Burton also submitted three written *pro se* Motions.  (ECF Nos. 95-97.)  The Government opposed the Motions (ECF Nos. 105, 107), and the Court heard argument from Burton and Government counsel at the April 17, 2025 motions hearing.  (4/17/25 Hr'g Tr. at 3-29.)  On April 4, 2025, Burton filed a *pro se* Motion to Issue [a] Subpoena to Produce Documents and Detailed Information in a Criminal Case (ECF No. 114), which the Government did not oppose.  On April 15, 2025, the Court issued an Order granting that Motion and specifying the procedures for issuance and service of the subpoenas and production of any responsive documents.  (ECF No. 119.)  On April 21, 2025, Burton filed a *pro se* Motion *in Limine* to Exclude Coerced and Contaminated Testimony, Under Federal Rules of Evidence (ECF No. 124), and a *pro se* Motion [*in*] *Limine* and Memorandum of Law to Exclude False and Unreliable Confessions and Statements from Evidence at Trial.  (ECF No. 125.)  The Government has not yet responded to the Motions *in Limine*.

[3] At the May 5, 2025 hearing, the Court also addressed whether the circumstances, including pending motions, necessitated continuance of the June 16, 2025 trial date.  All parties initially advised that they were prepared to go to trial as scheduled (5/5/25 Hr'g Tr. at 6-7), but the Government later requested *in camera* to submit its position regarding continuance by letter the following day.  On May 6, 2025, the Government filed a letter request and proposed order to continue the trial.  (ECF No. 132.)  In response, Defendants advised the Court that they opposed a continuance.  (ECF No. 140; 5/9/25 standby counsel email on behalf of Burton (on file with Court).)  On May 22, 2025, the Court granted the Government's request for continuance and rescheduled the trial for July 21, 2025.  (ECF No. 143.)

## II. LEGAL STANDARD

Federal Rule of Criminal Procedure 8(b) permits an indictment or information to charge two or more defendants "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Defendants joined in an indictment or information may be charged in one or more counts together or separately, and all defendants need not be charged in each count. *Id*. "[T]he federal system prefers 'joint trials of defendants who are indicted together [ ]' because joint trials 'promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts.'" *United States v. Urban*, 404 F.3d 754, 775 (3d Cir. 2005) (quoting *Zafiro v. United States*, 506 U.S. 534, 537 (1993)). The preference for joint trials is particularly strong when defendants are charged in a single conspiracy. *See United States v. Voigt*, 89 F.3d 1050, 1094 (3d Cir. 1996). Joint trials "aid the finder of fact in determining the full extent of the conspiracy, and prevent the tactical disadvantage to the government from disclosure of its case." *Id.* (internal citations and quotation marks omitted). Moreover, "as 'acts committed by one [co-conspirator] in furtherance of the conspiracy [would be] admissible against the other' co-conspirator in a separate trial, severance would serve little to no purpose except to waste public resources." *United States v. Done*, No. 09-601, 2011 WL 3912756, at *5 (D.N.J. Sept. 6, 2011) (quoting *United States v. Hart*, 273 F.3d 363, 370 (3d Cir. 2001), *aff'd*, 589 F. App'x 49 (3d Cir. 2015)); *see also United States v. Ward*, 793 F.2d 551, 556 (3d Cir. 1986) ("Participants in a single conspiracy should ordinarily be tried together for purposes of judicial efficiency and consistency, even if the evidence against one is more damaging than that against another.")

Where defendants have been properly charged together pursuant to Rule 8(a), a court may grant severance under Rule 14, which provides: "If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the

government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires." Fed. R. Crim. P. 14(a). However, a district court should grant severance of properly joined defendants "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. In a recent case, the Third Circuit Court of Appeals noted that "motions to sever predicated on prejudicial joint trials are frequently made and infrequently granted." *United States v. Green*, 114 F.4th 163, 172 (3d Cir. 2024). The Court then explained the kinds of prejudice that can warrant severance.

> The risk of an unfair trial may occur in three scenarios: (1) "when evidence that the jury should not consider against a defendant and that would not be admissible if a defendant were tried alone is admitted against a codefendant;" *Zafiro*, 506 U.S. at 539; (2) when "essential exculpatory evidence that would be available to a defendant tried alone were unavailable in a joint trial;" *id.*, and (3) when defendants assert mutually antagonistic defenses, *Voigt*, 89 F.3d at 1094. With reference to the third category, we have long held that a mutually antagonistic defense exists when "acquittal of one codefendant would necessarily call for the conviction of the other."

*Id*.

The burden of showing prejudice rests with the defendant seeking severance, who must demonstrate "'that the denial of severance would lead to clear and substantial prejudice resulting in a manifestly unfair trial.'" *United States v. Lore*, 430 F.3d 190, 205 (3d Cir. 2005) (quoting *Urban*, 404 F.3d at 775); *see also United States v. Savage*, 85 F.4th 102, 118 (3d Cir. 2023) ("[A] defendant, properly joined with other defendants in a criminal indictment, has 'a heavy burden in gaining severance.'" (quoting *United States v. Quintero*, 38 F.3d 1317, 1343 (3d Cir. 1994)), *cert. denied*, 144 S. Ct. 1020 (2024), and *cert. denied sub nom.*, *Merritt v. United States*, 144 S. Ct. 1468 (2024)). "Mere allegations of prejudice are not enough; and it is not sufficient simply to establish that severance would improve the defendant's chance of acquittal." *United States v. Reicherter*, 647 F.2d 397, 400 (3d Cir. 1981). Similarly, severance is not warranted

"'merely because evidence against a co-defendant is more damaging than the evidence against the moving party.'" *Lore*, 430 at 205 (quoting *United States v. Somers*, 496 F.2d 723, 730 (3d Cir. 1974)). "Instead, the relevant inquiry is 'whether the jury will be able to compartmentalize the evidence as it relates to separate defendants in view of its volume and limited admissibility.'" *Id.* (quoting *United States v. Davis*, 397 F.3d 173, 182 (3d Cir. 2005)). "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro*, 506 U.S. at 541.

## III.   DISCUSSION

### A.   Burton's Motion to Sever

Burton's Memorandum states that his request for severance "is based upon overwhelming grounds of fundamental unfairness." (Burton Mem. at 1 (ECF pagination).)  He specifies those grounds as: "(1) The government reliance on insufficient evidence[;] (2) [a] principle [sic] witness whose credibility has been discredited by its own investigation[;] (3) [i]mproper prosecutorial conduct[; and] (4) [v]iolation of [R]ule 41, regarding unlawful search and seizure (ARREST)." (*Id.*)  Burton contends that "[t]he cumulative effect of those DUE-PROCESS VIOLATIONS, infringing upon defendant[']s rights under 4TH, 5TH and 14TH AMENDMENTS, severely prejudices defendant[']s ability to receive a fair trial," and that "[w]ithout severance Defendant faces the real and substantial risk of being convicted "NOT" on lawfully obtained, credible evidence, but on spill over effect of inadmissible, tainted or perjured testimony." (*Id.* at 1-2.)  These arguments challenge the sufficiency, admissibility, and veracity of the Government's anticipated evidence against Burton, but they do not refer to or demonstrate a substantial risk of the kinds of prejudice that could warrant severance of his trial from Jackson-

9

Fletcher's.[4] *See Green*, 114 F.4th at 172 (discussing the scenarios in which joinder of defendants may risk an unfair trial).

Burton's Memorandum further suggests that there is a "substantial risk that the jury will be unable to compartmentalize the evidence as to each defendant," and that "[j]oinder with co-defendant['s] evidence of guilt, (possibility to introduce confessions) under these circumstances will cause spillover prejudice, confusing the jury and allowing evidence admissible only against other to only improperly taint defendant." (*Id.* at 4.) These assertions of prejudice are speculative and insufficient to warrant severance of the Defendants. First, the fact that some evidence may pertain to charges alleged only against Jackson-Fletcher does not warrant severance. *See, e.g.*, *Savage*, 85 F.4th at 118 ("We will not find prejudice 'just because all evidence adduced is not germane to all counts against each defendant,' or because certain defendants are 'seemingly less culpable,' or because evidence is 'more damaging to one defendant than others.'" (quoting *United States v. Eufrasio*, 935 F.2d 553, 568 (3d Cir. 1991))). Second, at this juncture, there is no indication that the Government will offer confessions that unfairly taint Burton vis-à-vis Jackson-Fletcher, or that Jackson-Fletcher will offer a defense antagonistic to Burton's. Finally, because Burton and Jackson-Fletcher are both charged in all but two counts of the Indictment—including conspiracy and most of the alleged Overt Acts in furtherance thereof—the evidence as to each Defendant will be largely the same and, in any event, admissible against both as alleged co-conspirators. *See, e.g.*, *Hart*, 273 F.3d at 370 ("[A]cts committed by one in furtherance of the conspiracy were admissible against the other.")

---

[4] As the Government notes, Burton has filed *pro se* Motions seeking to preclude the evidence he claims is inadmissible. (*See* Gov't Opp. at 5-6; *see also* ECF Nos. 95, 124, 125.)

Burton has not demonstrated a "serious risk" that a joint trial with Jackson-Fletcher would deny him a fair trial or "prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539.

### B.   Jackson-Fletcher's Motion to Sever

Jackson-Fletcher's Motion for Severance is primarily based on Burton's *pro se* status, and notes that "a trial involving a *pro se* defendant and co-defendants who are assisted by counsel is pregnant with the possibility of prejudice." (Jackson-Fletcher Mem. at 4-5 (quoting *United States v. Veteto*, 701 F.2d 136, 139 (11th Cir. 1983)).)  While this concern is by no means trivial, the *Veteto* court and others have observed that a trial with a *pro se* co-defendant "is not prejudicial *per se*." *Veteto*, 701 F.2d at 139; *see also United States v. Stanley*, 711 F. App'x 693, 695 (4th Cir. 2017) ("[T]he mere fact that a codefendant is proceeding *pro se* is not in itself a ground for severance." (quoting *United States v. Jarrett*, 684 F.3d 800, 804 (8th Cir. 2012))); *United States v. Oglesby*, 764 F.2d 1273, 1276 (7th Cir. 1985) (holding that defendant failed to establish how he would specifically be prejudiced by co-defendant's *pro se* representation). Here, there is presently no basis for the Court to grant severance based solely on Burton's decision to proceed *pro se*.  Burton has not exhibited, nor indicated a likelihood that he will engage in, conduct that is disruptive or deliberately violative of Court orders or applicable rules. And although Burton is untrained in the law—and the Court has advised him of its opinion that proceeding *pro se* is unwise—he has demonstrated an intention and efforts to comply with the Court's Orders and procedural requirements.  Burton also has not indicated that he will offer a defense that is prejudicially incompatible with Jackson-Fletcher's, and if Burton requires assistance in conducting his defense appropriately, he has available the guidance of appointed standby counsel.  Finally, the Court is prepared to give all necessary instructions to the jury regarding its obligation to compartmentalize the evidence as to each Defendant and to give

individual consideration to each charge against each Defendant. *See Urban*, 404 F.3d at 776 (discussing jury instructions regarding jointly-charged defendants). We are confident at this juncture that a jury can fairly assess the evidence against each Defendant, and that it will understand and follow the Court's instructions. *See Samia v. United States*, 599 U.S. 635, 646 (2023) ("[O]ur legal system presumes that jurors will 'attend closely the particular language of [such] instructions in a criminal case and strive to understand, make sense of, and follow' them." (quoting *United States v. Olano*, 507 U.S. 725, 740 (1993))).

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motions for Severance will be denied without prejudice. Either Defendant may renew their request for severance if circumstances arise demonstrating a serious risk that a joint trial would result in a manifestly unfair trial. An appropriate order follows.

**BY THE COURT:**


 */s/ R. Barclay Surrick*
**R. BARCLAY SURRICK, J.**