IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL ACTION |
| v. | : | |
| | : | NO. 23-154-1 |
| CHRISTOPHER BURTON | : | |

**MEMORANDUM**

**SURRICK, J.**                                                                                                   **AUGUST 11, 2025**

**I.     BACKGROUND**

On June 16, 2025, *pro se* Defendant Christopher Burton filed three Motions seeking various forms of relief, including dismissal of the Indictment. (ECF Nos. 152-54.) Defendant's first Motion argues that the Indictment should be dismissed because of egregious government conduct relating to the sequence in which Defendant was indicted, arrested, and arraigned, and because his Indictment was based on unreliable information provided to the grand jury. (ECF No. 152.) In his second Motion, Defendant argues that his statutory and constitutional speedy trial rights have been violated. (ECF No. 153.) Defendant's third Motion argues that the Government failed to comply with its disclosure obligations under Fed. R. Crim. P. 5(f) and *Brady v. Maryland*, 373 U.S. 83 (1963). On July 28, 2025, we issued an Order denying these Motions. (ECF No. 215.) This Memorandum sets forth the analysis explaining our July 28, 2025 Order.

**II.    LEGAL STANDARD**

A motion to dismiss a criminal indictment may be brought at any time before trial. *See* Fed. R. Crim. P. 12(b)(3). A motion to dismiss the indictment may allege a defect in instituting the prosecution, including improper venue, violation of the constitutional right to a speedy trial, or selective prosecution. *See* Fed. R. Crim. P. 12(b)(3)(A). A motion to dismiss may also be premised on perceived substantive deficiencies, including duplicity or multiplicity in the indictment, lack of

1

specificity, improper joinder, or failure to state an offense. *See* Fed. R. Crim. P. 12(b)(3)(B). Dismissal of an indictment is an "extreme sanction," reserved only for the most egregious abuses of the criminal process. *United States v. Fisher*, 692 F. Supp. 495, 501 (E.D. Pa. 1988) (internal citations omitted); *see also United States v. Martino*, 825 F.2d 754, 759 (3d Cir. 1987) (explaining dismissal of an indictment based on prosecutorial misconduct before the grand jury is an exceptionally rare remedy).

We further note the Court's duty to "liberally construe *pro se* filings with an eye toward their substance rather than their form." *See United States v. Delgado*, 363 F. App'x 853, 855 (3d Cir. 2010) (citing *United States v. Miller*, 197 F.3d 644, 648 (3d Cir. 1999)).

### III.   DISCUSSION

#### A.   Motion to Dismiss the Indictment

Defendant requests the Court dismiss the Indictment under Fed. R. Crim. P 12(b)(3) based on claims of prosecutorial misconduct, and procedural and constitutional violations. (ECF No. 152, at 4.) Defendant refers to various violations of the Federal Rules of Criminal Procedure and constitutional deprivations, which he claims warrant dismissal of the Indictment and which are premised on two basic arguments. First, Defendant argues that he was subject to arrest, arraignment, and improper seizure for several days prior to being indicted for any crime. Second, Defendant argues that the information provided to a grand jury, which led to his Indictment, was biased and unreliable.

With respect to Defendant's claims that the sequence of his Indictment, arrest, and arraignment violated the Federal Rules of Criminal Procedure and his constitutional rights, Defendant's argument is premised on a scrivener's error from an unrelated filing in which

2

Defendant's Indictment date is mistakenly listed as April 23, 2023 (instead of April 12, 2023).[1] The docket, which is a public record of which the Court may take judicial notice,[2] shows that Defendant was indicted on April 12, 2023, then arrested on April 13, 2023, and had a hearing on pretrial detention and arraignment on August 18, 2023. (*See* ECF Nos. 1, 11, 16.) Since Defendant's argument that he was improperly seized and arraigned prior to Indictment is based only on a scrivener's error and contradicted by the public docket and filings, his argument fails.[3]

Defendant also claims that information provided to the grand jury, and upon which a search warrant was based, is unreliable because the witnesses are biased, and that he was not implicated by any DNA analysis results. The Court previously addressed several of these specific arguments in its Memorandum & Order denying Defendant's request for a *Franks* hearing. (ECF Nos. 156, 157 (under seal).) More generally, while Defendant's claims that witnesses are not reliable is a basis for cross-examination at trial, these kinds of claims do not warrant dismissal of a criminal indictment. *See Bank of Nova Scotia v. United States*, 487 U.S. 250, 261 (1988) ("the mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment."); *see also Costello v. United States*, 350 U. S. 359, 363 (1956) (holding that a court may not look behind the indictment to determine if the evidence upon which it was based is sufficient); *United States v. Martino*, 825 F.2d 754, 759 (3d Cir. 1987) (explaining that, even in cases of prosecutorial misconduct, "we looked to whether there was sufficient evidence to support the indictment" and

---

[1] Defendant raised this argument in a previous Motion (*see* ECF No. 95 at 3), which the Court denied. (*See* ECF No. 156.)

[2] *See generally Orabi v. Att'y Gen.*, 738 F.3d 535, 537 n.1 (3d Cir. 2014) ("We may take judicial notice of the contents of another Court's docket.")

[3] Defendant also argues in passing that he was subjected to *Miranda* violations. *Miranda* protects against self-incrimination. *Miranda v. Arizona*, 384 U.S. 436 (1966). Since Defendant makes no reference to any potentially incriminating statements to be excluded, this argument is misplaced.

that "[i]n almost all of the cases, we determined that the misconduct was harmless error and not prejudicial.").

### B. Motion for Speedy Trial Violation

In his second Motion, Defendant argues that his statutory and constitutional speedy trial rights have been violated. (ECF No. 153.) While Defendant Burton argues that the delays between his Indictment and trial constitute statutory and constitutional violations, he fails to account for excludable delays properly attributed to him and his co-defendant Jackson-Fletcher. Taking these delays into account, there has been no statutory or constitutional speedy trial violation.

#### 1. Speedy Trial Act.

The Speedy Trial Act generally requires that a defendant be brought to trial within 70 days from the date of the indictment or appearance before a judicial officer of the court in which the charges are pending, whichever occurs last. 18 U.S.C. § 3161(c)(1). The Act recognizes that "criminal cases vary widely and that there are valid reasons for greater delay in particular cases," and accordingly includes a number of exceptions that serve to pause the Speedy Trial clock and allow the Court to continue trial. *Zedner v. United States*, 547 U.S. 489, 497 (2006). As relevant here, the following events may pause the Speedy Trial clock: (1) any period of delay resulting from any pretrial motion, 18 U.S.C. § 3161(h)(1)(D); (2) excludable delays applicable to a co-defendant joined for trial, 18 U.S.C. § 3161(h)(6); and (3) delays when the ends of justice outweigh the defendant's and the public's interest in a speedy trial, 18 U.S.C. § 3161(h)(7)(A).

Applying these exclusions,[4] the only periods during which the Speedy Trial clock ran are:

---

[4] The excludable delays under the Speedy Trial Act in this matter through January 8, 2025 are chronicled in a prior Memorandum issued by the Court. (*See* ECF No. 77 at 1-5.) Moreover, any of these delays caused by Jackson-Fletcher are also attributable to Burton. *See, e.g.*, *United States v. Thompson*, 716 F. App'x 69, 72 (3d Cir. 2017) ("Defendants bear the responsibility of delay caused by their co-defendants, and such delay cannot be attributed to the Government." (citing *United States v. Claxton*, 766

4

- Dates between April 14, 2023 (date Indictment was unsealed and Defendants first appeared before a judicial officer) and April 26, 2023 (defense motions for an extension of time to file pretrial motions): 11 days; and

- Dates between May 1, 2023 (the Court granting defense motion for extension) and May 18, 2023 (the first motion to continue trial filed by Burton's co-defendant, Jackson-Fletcher): 16 days.

Moreover, many of the excludable delays are attributable to Burton's representation by multiple different defense counsel, each of whom required time to prepare for trial, as well as Burton's decision to proceed *pro se* for a period, during which he filed a significant number of *pro se* pre-trial motions.[5]  *See United States v. Mayfield*, 361 Fed. App'x 425, 429 (3d Cir. 2010) (affirming denial of motion to dismiss indictment on speedy trial grounds where continuance was granted to accommodate defendant's request to change lawyers).

Given that, in total, only 27 days have run, there has been no Speedy Trial Act violation.

### 2. Sixth Amendment Right to Speedy Trial.

Defendant further argues that his Sixth Amendment right to a speedy trial has been violated. Under the Sixth Amendment there is not a specific time period that governs a constitutional speedy trial analysis, as "the time period varies with the facts and circumstances of each individual case," and the Court must consider: "Length of delay, the reason for the delay, the defendant's assertion

---

F.3d 280, 295 (3d Cir. 2014))); *United States v. Rodriguez-Mendez*, No. 22-1422, 2023 WL 3378005, at *3 (3d Cir. May 11, 2023) (affirming district court ruling that delay did not violate Sixth Amendment and noting that while defendant "did not join in many of the [co-defendants'] requests for extensions, neither did he file any objections to them nor a motion to sever"), *cert. denied*, 144 S. Ct. 314 (2023). Subsequently, during a status conference on March 24, 2025, Defendant Burton requested and was permitted to proceed *pro se* and then filed a number of pre-trial motions that also tolled the Speedy Trial clock. (*See* ECF Nos. 114, 115, 124, 125, 130.)

[5] Prior to trial, Burton was represented by a series of three appointed or retained counsel. (See ECF Nos. 8, 43, 44, 70.) On March 24, 2025, the Court granted Burton's request to proceed *pro se* and appointed his then-counsel as standby counsel. (ECF Nos. 98, 100 (under seal).) His standby counsel later moved to withdraw (ECF No. 159), and on July 1, 2025, the Court appointed substitute standby counsel. (ECF No. 166.) On July 16, 2025, at the final pretrial conference, Burton informed the Court that he no longer wished to proceed *pro se* and requested that his then-standby counsel, Kenneth C. Edelin, Jr., Esquire, represent him fully as counsel at trial. (ECF No. 192.)

5

of his right, and prejudice to the defendant." *United States v. Wilson*, 216 F. Supp. 3d 566, 576 (E.D. Pa. 2016) (citing *Barker v. Wingo*, 407 U.S. 514, 521-22 (1972)).  None of these factors, standing alone, are "either necessary or sufficient condition" to the analysis, and must be considered together with other relevant circumstances.  *Barker*, 407 U.S. at 533.

### a.   *Length of the delay.*

With respect to the length of delay, approximately 28 months elapsed between when Burton was indicted and taken into federal custody, and the start of trial.  However, the length of the delay is not dispositive and must be balanced against other factors.  *See Wilson*, 216 F. Supp. 3d at 577 (finding that a delay of two years and five months "can be permissible"); *Conroy v. Leone*, 316 F. App'x 140, 144-45 (3d. Cir. 2009) (a delay of four years did not violate the defendant's speedy trial rights because he delayed in asserting his right, there were legitimate reasons for delay, and there was no showing of prejudice).

### b.   *Reason of the delay.*

Here, every delay has been excusable and in the interest of justice, and as explained above, virtually all of the delay was attributable to the Burton's (or his co-Defendant's) actions, including preparing for trial in a conspiracy case involving multiple victims with voluminous discovery, the numerous defense pre-trial motions, as well as Defendant's repeated terminations of prior attorneys and decision to proceed *pro se* just months prior to the previously scheduled trial date.  The excludable delays account for the time that new counsel required to learn the case and prepare for trial, and "an exclusion applicable to one defendant applies to all co-defendants." *United States v. Arbelaez*, 7 F.3d 344, 347 (3d Cir. 1993).[6]

---

[6] Defendant also argues that the reason for the delay is due to "the prosecution's failure to comply with the Federal Rules of Criminal Procedure … and withholding requested evidence favorable to defendant under *Brady*." (ECF No. 153, at 2.)  However, as discussed *infra* at Section III.C, Burton has not raised a colorable claim of a *Brady* violation.

### c. Defendant's assertion of speedy trial rights.

Defendant had not asserted his speedy trial rights until the instant Motion filed on June 16, 2025. (ECF No. 153.) While Defendant notes that the Court advised in February 2025 that it would not grant any more continuances (*id.* at 4), that was before Defendant elected to proceed *pro se* and later requested substitute standby counsel. Regardless, Defendant does not claim in the instant Motion, or in any prior *pro se* filing, that he had previously asserted his speedy trial rights, and nothing on the docket reflects that he did.

### d. Prejudice to Defendant.

Finally, there has been no showing of prejudice to Defendant. The Supreme Court has identified three possible types of prejudice that may result from delaying trial: "(1) "oppressive pretrial incarceration," (2) "anxiety and concern" suffered by the accused, and (3) impairment of the accused's defense." *Barker*, 407 U.S. at 532. "The possibility of prejudice is not enough; the defendant must establish that the delay actually caused him prejudice." *Wilson*, 216 F. Supp. 3d at 579. Here, Defendant has not claimed that he suffered "oppressive pretrial incarceration" or "anxiety and concern." More importantly, Defendant also does not articulate with any specificity how any delays impaired his defense.

For these reasons, we find that Defendant's Sixth Amendment speedy trial rights have not been violated.[7]

---

[7] We further note that compliance with the Speedy Trial Act weighs against Burton's claim of a Sixth Amendment speedy trial violation. As other courts have observed, "because the [Speedy Trial Act] was enacted largely to make defendants' constitutional speedy trial rights meaningful, many courts have noted that 'it will be an unusual case in which the time limits of the Speedy Trial Act have been met but the Sixth Amendment right to speedy trial has been violated.'" *United States v. Alvin*, 30 F. Supp. 3d 323, 340 (E.D. Pa. 2014) (quoting *United States v. Nance*, 666 F.2d 353, 360 (9th Cir. 1982)); *see also United States v. Gedeon*, No. 21-210, 2023 WL 3689610, at *3 (E.D. Pa. May 26, 2023) (quoting *Alvin*, 30 F. Supp. 3d at 340).

      **C.     Defendant's Motion for *Brady* Violation and
<u>Violation of Federal Rules of Criminal Procedure 5(f)</u>**

In his third Motion, Defendant argues that the Government violated *Brady* and Federal Rule of Criminal Procedure 5(f). *Brady* requires that the Government disclose, through discovery, potentially exculpatory evidence to a criminal defendant. 373 U.S. at 87 (holding that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment"); *see* also Fed. R. Crim. P. 5(f) (providing for confirmation and reminder of prosecutorial obligations under *Brady*.)

Here, Defendant claims that the prosecution only provided "partial discovery and decided to withhold exculpatory, impeachment and mitigating evidence favorable to the defendant[.]" Defendant proceeds to list categories of materials that he claims the Government has withheld, including (1) the affidavit/application in support of Defendant's arrest; (2) information that would impeach the credibility of a potential witness, W.J., including any terms of witness cooperation, criminal history, information regarding personal relationships, use of controlled substances, and results of mental examinations; and (3) a list of witnesses that the Government intends to call as well as a list and contact information for individuals the Government does not intend to call.

However, Defendant has not made out a colorable claim of a *Brady* violation with respect to any of these three categories of information. First, given that Defendant was arrested pursuant to a federal grand jury Indictment, there is no affidavit containing substantive information in support of his arrest. Moreover, as the Government notes, the motion for a bench warrant is publicly available on the docket. Second, with respect to information regarding the credibility and potential biases of W.J., the Government responded that, to the extent such material exists and is within its possession, it had been provided to Burton. Indeed, Defendant's own prior motions

8

reflect that he received such material.[8] [9]  Third, the Government represented in its response on June 30, 2025, that it would provide a witness list sufficiently in advance of trial, and that, as of the time it filed its opposition to Defendant's Motion, it also had already provided the identities of the victims and witnesses whom the government was aware witnessed the charged crimes.

In short, Defendant's Motion fails to establish a colorable claim of a *Brady* violation.

## IV. CONCLUSION

For these reasons, Defendant's *pro se* Motions (ECF Nos. 152-54) were denied.

                                **BY THE COURT:**

                                */s/ R. Barclay Surrick*
                                **R. BARCLAY SURRICK, J.**

---

[8] *See, e.g.,* Defendant Christopher Burton's *pro se* Motion to Suppress Pursuant to *Franks v. Delaware*, ECF No. 95 (discussing details and excerpts of Special Agent Sarah O'Reilly's recorded interview of W.J.).

[9] Likewise, Defendant's own arguments and characterizations indicate that he has already received much of the information that forms the basis of his motion, including DNA results. (*See* ECF No. 154 at 6).